# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | | |
|---|---|---|
| **MID-SOUTH BANK & TRUST CO.,** | ) | |
| **V.R. WILLIAMS & CO., and** | ) | |
| **FRANKLIN COUNTY BANK,** | ) | |
| | ) | |
| Plaintiffs/Appellees, | ) | **Franklin Chancery No. 11,666** |
| | ) | |
| **VS.** | ) | **Appeal No. 01A01-9403-CH-00107** |
| | ) | |
| **PAUL MAX QUANDT ESTATE,** | ) | |
| **NELLE S. QUANDT, JESSICA** | ) | |
| **QUANDT, PAUL QUANDT, JR., and** | ) | |
| **PAUL MAX QUANDT, III,** | ) | |
| | ) | |
| Defendants/Appellants. | ) | |

**FILED**

October 20, 1995

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF FRANKLIN COUNTY
AT WINCHESTER, TENNESSEE
THE HONORABLE THOMAS A. GREER, JR., JUDGE


**PAUL MAX QUANDT, JR., PRO SE**
Wnchester, Tennessee

**JAMES C. THOMAS**
Winchester, Tennessee
Attorney for Appellant, Jessica Quandt

**CLINTON H. SWAFFORD**
**SWAFFORD, PETERS & PRIEST**
Winchester, Tennessee
Attorney for Appellees Mid-South Bank &
Trust Co. and V.R. Williams & Co.

**J. MARK STEWART**
Winchester, Tennessee
Attorney for Appellee Franklin County Bank


**REVERSED IN PART, AFFIRMED IN PART**
**& REMANDED**


                                            **ALAN E. HIGHERS, JUDGE**


**CONCUR:**



**W. FRANK CRAWFORD, JUDGE**

**DAVID R. FARMER, JUDGE**

This appeal represents a consolidation of three actions. The first case, styled <u>V.R.</u>

Williams & Company v. Paul M. Quandt and Nelle Quandt, is an appeal to Circuit Court from a judgment in the General Sessions Court of Franklin County finding Paul Quandt indebted to V.R. Williams & Co. in the amount of $3664.69 for past due insurance premiums. The second case, styled In Re: Estate of Paul Max Quandt, Deceased, is a probate proceeding filed in the Chancery Court of Franklin County to administer the estate of Paul Max Quandt. The only issues in the probate proceeding heard on consolidation concern creditors' claims filed against Paul Quandt's estate and the exceptions filed thereto. The third case, styled Mid-South Bank & Company, V.R. Williams & Company and Franklin County Bank v. Paul Max Quandt Estate, Nelle S. Quandt, Jessica Quandt, Paul Quandt, Jr. and Paul Max Quandt, III., is a Chancery Court action to set aside fraudulent conveyances of property owned by Paul M. Quandt.

The pertinent facts relevant to all three cases are as follows: Paul M. Quandt died without a will on September 3, 1986. At the time of his death, Paul Quandt's estate consisted of six promissory notes with a face value of $135,650 and a checking account with a balance of $427.75. On April 28, 1987, Nelle Quandt, wife of Paul Quandt, and Phillis Quandt Gallagher, daughter of Paul Quandt, filed a petition for letters of administration in the Chancery Court of Franklin County seeking to be appointed administratrixes of Paul Quandt's estate. By order dated June 19, 1987, Nelle Quandt and Phillis Gallagher were appointed co-administratrixes of the estate.

Thereafter, the creditors of Paul Quandt filed the following claims with the estate pursuant to T.C.A. § 30-2-307:

1) Mid-South Bank & Trust (MSBT) filed a claim for payment of a matured note in the amount of $80,853.46 executed by Paul Quandt and Nelle Quandt on January 24, 1986.

2) MSBT filed a claim for payment of a matured note in the amount of $11,500 executed by Paul Quandt and Nelle Quandt on April 8, 1986.

3) V.R. Williams & Company (V.R. Williams) filed a claim for payment of $4,911.38 in earned premiums and accrued interest on insurance policies providing property

and casualty insurance to Paul Quandt. At the time of Paul Quandt's death, an appeal was pending in Circuit Court from a judgment in the General Sessions Court finding Paul Quandt liable to V.R. Williams in the amount of $3664.69.

4) Franklin County Bank (FCB) filed a claim for payment of a note in the amount of $23,000 executed by Paul Quandt and Nelle Quandt on March 21, 1984.

The Administratrixes of the estate filed exceptions to the claims of MSBT and the claim of V.R. Williams.

On November 3, 1987, MSBT and V.R. Williams filed suit in Chancery Court against the estate of Paul Quandt, Nelle Quandt, Paul Quandt, Jr., Paul Quandt, III and Jessica Quandt alleging that certain conveyances by Paul Quandt were fraudulent within the meaning of T.C.A. § 66-3-101 et. seq.. The plaintiffs requested that the conveyances be set aside and declared null and void and that all real estate owned by the estate of Paul Quandt be sold for the satisfaction of debts. FCB intervened in the fraudulent conveyance action on August 25, 1989. On March 5, 1991, Circuit Court Judge Thomas Greer, sitting by interchange in the Chancery Court, consolidated all three cases to resolve the exceptions to the claims in the administration of Paul Quandt's estate, the appeal of the judgment in favor of V.R. Williams, and the claim to set aside the alleged fraudulent conveyances.

The proof adduced at trial concerning the creditors' claims is as follows: Paul Quandt and Nelle Quandt executed two promissory notes to MSBT in the amount of $80,853.46 and $11,500 respectively. The first note, signed on January 24, 1986, had an 11.25 percent annual interest rate and was due on May 24, 1986. Interest accrued daily at a rate of $24.92. The second note, signed on April 8, 1986, had an 11 percent annual interest rate and was due August 6, 1986. The daily accrual was calculated to be $3.46. Both notes were renewals of pre-existing loans and were unsecured. At the time of Paul Quandt's death, both notes were due and unpaid. Both notes provided for attorney's fees for costs of collection.

3

On March 21, 1984, Paul Quandt and Nelle Quandt executed a promissory note in favor of FCB in the principal amount of $30,000, with interest at a rate of 13.5 percent and a maturity date of April 1, 1989. At the time of the filing of FCB's claim, the outstanding balance on the note was $23,000 with accrued interest in the amount of $2,037.86. Interest accrued on the note at the rate of $6.93 per day. The note provided for attorney's fees for costs of collection.

James Cunningham, an insurance agent and partner in V.R. Williams, testified that through the years his company had procured property and casualty insurance for Paul Quandt. In 1985 and 1986, Cunningham testified that the premiums charged by the company were unpaid. According to Cunningham, V.R. Williams paid the insurer who would provide coverage to Quandt and then would collect the premiums from Quandt at a later date. After Quandt repeatedly failed to pay the premiums, V.R. Williams filed suit in General Sessions Court and received a judgment in the amount of $3,664.69. At the time of Paul Quandt's death there had been no payment in satisfaction of the judgment.

With regard to the fraudulent conveyances, the proof showed that on June 26, 1986, three months prior to his death, Paul Quandt conveyed all of his land, cattle and farm equipment to his son and grandchildren in exchange for six promissory notes. The breakdown of the conveyances is as follows: Paul Quandt, Jr. received two tracts of land each consisting of approximately 90 acres in exchange for a promissory note and a deed of trust in the amount of $65,400. He also received all of Paul Quandt's farm machinery in exchange for a promissory note in the amount of $8,200. Paul Quandt, III received a one-half interest in a tract of land consisting of 141 acres in exchange for a promissory note and a deed of trust in the amount of $27,800. Jessica Quandt received a one-half interest in two tracts of land consisting of 95 acres and 40.21 acres in exchange for a promissory note and a deed of trust in the amount of $20,250. Both Paul Quandt, III and Jessica Quandt received all of Paul Quandt's cattle in exchange for a promissory note from

4

each in the amount of $7,000.[1]  The six promissory notes, with a total face value of $135,650, were payable over a twelve year period with a stated interest rate of seven percent.  As stipulated by the parties, these six notes plus a checking account  with a balance of $427.75 represented the total value of Paul Quandt's estate at the time of his death.  A financial statement, signed by Paul Quandt and filed with MSBT on December 23, 1985, showed Paul Quandt's net worth, six months before the conveyances, to be $1,247,559.09.

Thomas Hampton, a real estate appraiser, testified that he appraised the four tracts of property conveyed by Paul Quandt using the direct sales comparison approach to value the property.  According to Hampton, as of June 26, 1986, the total appraised value of the property conveyed by Paul Quandt to his son and grandchildren was $383,850.

Davis Mason, a former vice-president in charge of loans at MSBT and a banker for 20 years, testified as to the fair market value of the six promissory notes given to Paul Quandt by his son and grandchildren.  Mason testified that he evaluated the notes according to their stated interest rate and payment schedule.  Based on this evaluation, Mason testified, that in his opinion, the fair present market value of the notes was $110,000.  According to Mason, the notes were not worth their face value because of the difference  between the stated interest rate on the notes and the current market interest rate at the time of the conveyances.

Paul Quandt, Jr. testified that part of the consideration for the transfer of the land was past services rendered by him and his children in running Paul Quandt's farm.  Paul Quandt, Jr. testified that he worked on his father's farm from the time he was five years old and was never compensated.  According to Paul Quandt, Jr., he and his father had an understanding that all of the land they farmed together would be his when his father died.

---

[1] Paul Quandt, Jr. signed as surety on the notes executed by Paul Quandt, III and Jessica Quandt as they were both minors at the time of the conveyances.  A guardian ad litem has represented the interests of Jessica Quandt at trial and on appeal. Paul Quandt, III has reached the age of majority.

5

Both grandchildren also testified that they worked on the farm. All three transferees, however, signed an oath on the warranty deed affirming that the face value of the notes equalled the fair market value of the property.

Following testimony regarding the fraudulent conveyances, the trial judge submitted five questions to the jury. The questions and the jury's answers are as follows:

1) What was the fair cash market value of the three [sic] [four] tracts of land conveyed by Paul Quandt, Sr. on June 26, 1986?
   Answer: $280,000

2) On June 26, 1986, before the sale of the land, cattle, and equipment, what was the net worth of Paul Quandt, Sr.?
   Answer: 1.2 million

3) What was the fair cash market value of the six notes payable to Paul Quandt, Sr., dated June 26, 1986?
   Answer: $110,000

4) Did the transactions described herein on June 26, 1986, hinder and delay the creditors in the collection of their debts as they matured?
   Answer: Yes

5) Did Paul Quandt, Sr., intend to defraud his creditors by the conveyance of land, cattle, and farm equipment on June 26, 1986?
   Answer: No

A final decree was issued by the trial court on December 2, 1993. The trial court, taking into consideration the issues determined by the jury, found as follows:

1. Based on claims filed for principal and interest calculated through March 5, 1991, the Estate of Paul Max Quandt, Sr., and Nelle S. Quandt were indebted to Mid South [sic] Bank & Trust Company in the amount of $124,401.50 and an additional sum of $17,000.07 plus reasonable attorneys' fees.

2. Based on the claim filed for principal and interest calculated through March 5, 1991, the Estate of Paul Max Quandt, Sr., and Nelle S. Quandt were indebted to Franklin County Bank in the amount of $35,667.84 plus reasonable attorneys' fees.

3. Based on the claim filed, the Estate of Paul Max Quandt, Sr., and Nelle S. Quandt were indebted to V.R. Williams & Company in the amount of $2,876.00 plus interest at ten percent per annum since March 3, 1986.

4. The notes to both banks provide for reasonable attorneys' fees and costs of collection, and the same are allowed in the amounts hereinafter provided.

5. The jury, by its verdict, found that on June 26, 1986, before the sale of the land, cattle and equipment, the net worth of

6

Paul Max Quandt, Sr., was $1,200,000.00. The jury further found that the fair cash market value of the six notes made payable to Paul Max Quandt, Sr., dated June 26, 1986, in consideration for the transfer of all his assets amounted to $110,000. Consistent with the above findings, the jury then found that the transactions of June 26, 1986, did hinder and delay the creditors in the collection of their debts as they matured.

6. The court then found that the parties had stipulated at the beginning of the trial that the total value of the assets of Paul Max Quandt, Sr., consisted of six notes valued at $110,000 representing the total purchase price for three farms, machinery and cattle plus $427.75 in a checking account. These six notes, plus the amount of $427.75 in a checking account, represented the total value of his estate at the time of his death.

7. The voluntary conveyance of the farms, cattle and equipment valued at $1,200,000.00 for six notes valued at $110,000 was a conveyance without a fair consideration.

8. After the aforesaid transaction, Paul Max Quandt, Sr., was insolvent because the present salable value of his assets was then less than the amount required to pay his existing debts as they matured.

9. The conveyances by Paul Max Quandt, Sr., on June 26, 1986, rendered him insolvent, and such conveyances were fraudulent as to the creditors named herein without regard to his actual intent since said conveyances were made without a fair consideration.

After setting forth the above findings of fact and conclusions of law, the court declared the conveyances null and void and ordered all of the real and personal property returned to the estate of Paul Quandt. The court then ordered the property sold at public auction with the proceeds of the sale going to satisfy the costs of the action and the debts of the estate.

Nelle Quandt, Paul Quandt, Jr., and Paul Quandt, III, without the assistance of counsel, and Jessica Quandt, with the assistance of the guardian ad litem, have appealed. For purposes of clarity, the three cases consolidated at trial will be discussed separately.

I. In Re: Estate of Paul Max Quandt, Deceased

7

Appellants have raised numerous issues on appeal concerning the trial court's order allowing the claims against the estate of Paul Quandt. We are unable to review the trial court's decision, however, as the Chancery Court did not have jurisdiction over the probate of Quandt's estate. Subject matter jurisdiction may be raised in any court at any time. Inasmuch as a judgment rendered without jurisdiction is a nullity, it is the duty of any court to determine the question of its jurisdiction on its own motion if the issue is not raised by the parties. Scales v. Winston, 760 S.W.2d 952 (Tenn. App. 1988).

T.C.A. § 16-16-20(a) provides:

> In all counties *where not otherwise specifically provided by public, private, special or local acts,* all jurisdiction relating to the probate of wills and the administration of estates of every nature...is hereby vested in the chancery court of the respective counties. (emphasis added)

Chapter 302 of the Private Acts of 1982 states:

> Effective September 1, 1982, the Probate Court of Franklin County, Tennessee, including all judicial jurisdiction now exercised by the Franklin County judge, including, but not limited to, wills; administration of decedents' estates, including the sale of decedents' land for the payment of debts; qualification of guardians; partition of land cases, both by sale and in kind; the affairs of minors, incompetents, and others laboring under a disability, shall not be separate from the current jurisdiction of the General Sessions Court of Franklin County, nor shall there be separate terms for Probate Court; it being the intent of this section to merge the Probate Court and General Sessions Court of Franklin County into one (1) court having jurisdiction over such matters.

In the present case, Nelle Quandt and Phillis Gallagher filed a petition for letters of administration in the Chancery Court of Franklin County. The estate of Paul Quandt was thereafter administered by the Chancery Court. As set out by Private Act above, jurisdiction over probate actions in Franklin County is vested with the General Sessions Court. Paul Max Quandt died as a resident and property owner in Franklin County. Therefore, pursuant to chapter 302 of the 1982 Private Acts, the Chancery Court did not have jurisdiction to administer the estate. Jurisdiction over the administration of the estate is vested in the General Sessions Court of Franklin County.

While the chancery court has special and limited jurisdiction in counties where

8

another court exercises probate jurisdiction by public or private act,[2] no special circumstances were alleged in the petition nor do we find any present in the case. Therefore, the judgment of the chancery court in In Re: Estate of Paul Max Quandt, Deceased, which allowed the creditors' claims against the estate of Paul Quandt, is reversed and dismissed.

## II. V.R. Williams & Company v. Paul M. Quandt and Nelle Quandt

Appellants raise two issues on appeal concerning the claim of V.R. Williams. First, the appellant, Jessica Quandt, argues that the court erred in allowing V.R. Williams to charge time differential interest on the outstanding balance owed by Paul Quandt. According to appellant, the proper amount of the claim is $2,876, the principal amount due on the policy. This issue is without merit. The final order in this cause provided that the estate of Paul Quandt was indebted to V.R. Williams in the amount of $2,876 plus post judgment interest. Time differential charges were not allowed. Second, appellants argue that the claim of V.R. Williams should have been dismissed because V.R. Williams did not take part in the trial. This issue is likewise without merit. V.R. Williams presented proof and was represented at trial.

## III. Mid-South Bank & Trust, et. al. v. Paul Max Quandt Estate, et. al.

Appellants raise numerous issues on appeal with regard to the trial court's ruling finding the conveyances by Paul Quandt fraudulent. We will address each issue as we perceive them to be stated.

A. Appellants argue that the trial court erred in using the decision of the jury as

---

[2]The special and limited jurisdiction has been held to extend to three cases: 1) where six months have elapsed from the time of the intestate's death and no person will apply or can be procured to administer on his estate; 2) where a suit involving the estate of the decedent is pending in the chancery court, the court can appoint an administrator *ad litem* if one has not previously been appointed; and 3) where an executor or administrator desires to resign or relinquish his trust. Pritchard on Wills and Administration of Estates § 48 (5th ed. 1994).

9

advisory only. This argument is without merit. Under T.C.A. § 21-1-103, a party to a suit in chancery is entitled to have any *material fact* decided by a jury. Under this statute, it is for the jury to determine the facts and the judge to apply the appropriate principles of law to those facts. The findings of fact by the jury are binding upon the judge. Smith County Educ. Ass'n. v. Anderson, 676 S.W.2d 328, 337-38 (Tenn. 1984). In the present case, the trial judge submitted five questions to the jury concerning the value of the property conveyed, the value of the notes and the intent of the Paul Quandt in making the transfers. The trial court accepted the jury's findings and applied the applicable law to those findings. As such, the verdict was not advisory and there was no error.

B. Appellant, Jessica Quandt, next contends that the court erred in holding that knowledge of fraudulent intent on the part of the grantee is not necessary to set aside a conveyance as fraudulent. We disagree. Under Tennessee law, a conveyance can be set aside as fraudulent if (1) the conveyance was made with actual intent to delay, hinder or defraud creditors; or (2) the conveyance was without a fair consideration and was made by a person who was insolvent or was thereby rendered insolvent. T.C.A. §§ 66-3-101 and 66-3-305. When a conveyance is made without a fair consideration by an insolvent debtor, the conveyance is fraudulent as a matter of law without regard to either the grantor's or grantee's intent. Fifth Third Bank v. McCloud, 628 N.E.2d 131, 133 (Ohio App. 1993); Schmitt v. Morgan, 471 N.Y.S.2d 365, 366 (A.D. 3 Dept. 1983); Waukesha County Dept. of Social Services v. Loper, 193 N.W.2d 679, 682 (Wis. 1972). In the present case, the trial court found the conveyance by Paul Quandt fraudulent as a matter of law under T.C.A. § 66-3-305. Therefore, intent of the grantee is irrelevant.

C. Appellants also take issue with the trial court's failure to submit to the jury the question of whether the conveyances were made without fair consideration. As stated earlier, the jury found that Paul Quandt's estate was worth $1.2 million before the sale of land, cattle and equipment to his son and grandchildren; and the fair market value of the six notes taken in exchange for the property was $110,000. Taking the jury's findings into consideration, the trial court found, as a matter of law, that the conveyances were without

10

a fair consideration. Whether a conveyance has been made for a fair consideration is generally a question of fact to be decided by the jury. American Investment Bank v. Marine Midland Bank, 595 N.Y.S.2d 537,538 (A.D. 2 Dept. 1993); Hove v Frazier, 115 N.W.2d 217, 219 (S.D. 1962); Sills v. Morgan, 9 S.E.2d 518 (N.C. 1940). Fair consideration is defined in T.C.A. § 66-3-304 as follows: "Fair consideration is given for property, or obligation: (1) [w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied...."

In the present case, we find the failure of the trial court to submit the question of fair consideration to the jury to be harmless error. T.R.A.P. 36(b) provides that a final judgment shall not be set aside unless the error more probably than not affected the judgment. Here, it cannot be disputed that six notes worth $110,000 are not a fair equivalent for property, cattle, and equipment valued at $1.2 million. Therefore, we find that the outcome of the case would not have been affected by submitting to the jury the question of fair consideration.

Appellants argue that the financial statement used by the jury to determine Paul Quandt's net worth included property not conveyed by Quandt and therefore should not have been used as a basis for determining fair consideration of the conveyance. However, looking solely to the land conveyed by Quandt which the jury determined to be worth $280,000 and which was conveyed in exchange for three notes with the face value of $113,450, we still find that reasonable minds could only have concluded that the conveyances were made without a fair consideration.

Appellants also argue that past services rendered to Quandt by Paul Quandt, Jr. and his children should have been considered a part of the consideration for the conveyances. In support of this theory, appellants cite Gardenhire v. White, 59 S.W. 661(Tenn. Ch. App. 1900), which held that valuable services rendered by a son to his father in return for an express agreement to be paid by the conveyance of land can be fair consideration for the conveyance. While acknowledging that satisfaction of an antecedent

11

debt can be consideration for a transfer of property, we hold that appellants are estopped from asserting that the consideration given for the transfers was any more than the actual face value of the notes. T.C.A. §67-4-409(a)(6)(A) requires a grantee to state under oath the actual consideration given for the transfer, or the value of the property, whichever is greater. False statements made respecting the consideration or value of the property transferred is punishable as perjury. T.C.A. § 67-4-409(a)(6)(B). Here, Paul Quandt, Jr., Paul Quandt, III and Jessica Quandt each signed an oath on their respective warranty deeds affirming that the face value of the notes given for the transfers equalled the fair market value of the property. If the past services of the three transferees were intended to be part of the consideration for the transfers, then the oaths should have reflected that the value of the property was greater than the *actual* consideration given. Appellants are bound by their oaths stating that the actual consideration given equalled the fair market value of the property.

D. Appellants next contend that the trial court erred in refusing to allow a local realtor testify as to the value of the land conveyed by using the comparable sale of another parcel of property. In support of this contention, appellants cite the general rule, found in the law of eminent domain, that proof of sales of similar property made at about the same time of the taking is admissible on the issue of the value of the property taken. Union Ry. Co. v. Hunton, 88 S.W. 182, 186 (Tenn. 1905); Memphis Housing Auth. v. Newton, 484 S.W.2d 896, 897 (Tenn. App. 1972). Even assuming that this rule applies outside of eminent domain cases, we find that the appellants have waived their right to appeal this issue.

At trial, after ruling that appellants' witness could not testify as to comparable sales of property to prove value, the trial judge recessed for the day and instructed Jessica Quandt's lawyer to "cite me authority that specific proof of comparable property introduced independently is admissible before a jury to attempt to prove the value of the property." The next day, the appellants did not call the realtor as a witness, did not provide the court with any law on the admissibility of the evidence, and did not make an offer of proof as to

12

the value of the comparable sales. As such, they waived their right challenge the trial court's initial ruling.

E. Appellant, Jessica Quandt, also takes issue with the trial court's refusal to allow Robert Baldwin, a former loan officer at MSBT, to testify that he never thought Paul Quandt was trying to defraud him. We find it unnecessary to discuss the merits of this issue, as any error made is harmless. As discussed above, the conveyances by Paul Quandt were declared fraudulent pursuant to T.C.A. § 66-3-305 which provides that a conveyance can be fraudulent regardless of the intent of the grantor. Therefore, the intent of Paul Quandt is irrelevant to the ultimate outcome of the case.

F. Appellants argue that the trial court erred in not declaring a mistrial when there were three counts of jury tampering. This issue is without merit. Upon learning of communications between a party and a witness with the jury, the trial judge questioned the jurors and witnesses at length concerning the communication. Upon a review of the questions and responses, we find that no jury tampering occurred.

G. Appellants argue that the trial court erred in not bringing forth a timely decision. This issue is without merit. The numerous motions filed by appellants, following the four day trial in 1991, are the primary cause of the trial court's delay in rendering its final judgment.

H. As their final argument with respect to the fraudulent conveyance action, appellants contend that the trial court erred in setting aside the conveyances of cattle and equipment because the complaint only addresses the conveyances of land. While it is true that the plaintiffs' specific prayer for relief only calls for the conveyances of real estate to be set aside, we find that the general prayer found in the complaint is sufficient to encompass the relief granted with respect to the personal property. Under the general prayer, a plaintiff may be granted such other relief as the pleadings and proof will justify, as long as it is not such as to take the defendant by surprise. Gibson's Suits in Chancery

13

§ 220 (7th ed. 1988). In the present case, the proof showed that Paul Quandt conveyed cattle and equipment to his son and grandchildren and that these conveyances were fraudulent within the meaning of T.C.A. § 66-3-305. Therefore, we find no error in the trial court's decision to set aside the conveyances of the personal property as well as the real estate.

For the foregoing reasons, we reverse in part, affirm in part, and remand. The probate aspects of the judgment of the court below are vacated. Costs on appeal are taxed equally to the parties.

_____

HIGHERS, J.

CONCUR:

_____

CRAWFORD, J.

_____

FARMER, J.